UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT GILLENS,<br><br>    *Plaintiff*,<br><br>v.<br><br>COLETTE PETERS, Director of the Federal Bureau of Prisons, *et al.*,<br><br>    *Defendants*. | Civil Action No. 22-1645 (TJK) |

## MEMORANDUM ORDER

Robert Gillens, proceeding pro se, sues various Federal Bureau of Prisons officials, for alleged constitutional violations stemming from his confinement at the United States Penitentiary in Bruceton Mills, West Virginia. He seeks declaratory and injunctive relief, as well as damages under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Before the Court is Defendants' Motion to Dismiss or, Alternatively, to Transfer. ECF No. 11. Defendants assert several grounds for dismissal, including lack of personal jurisdiction, improper service, failure to state a claim, and improper venue. Alternatively, they move to transfer this case to either the Northern District of West Virginia, where the conduct giving rise to Plaintiff's claims occurred, or the Middle District of Florida, where Plaintiff is now incarcerated. For the following reasons, the Court will grant Defendants' motion in part. Specifically, it will dismiss his *Bivens* claims against Defendants Michael Carvajal, Ian Connors, and J.C. Petrucci and transfer the remaining claims to the Northern District of West Virginia, reserving for the transferee court the task of resolving the remaining grounds for dismissal.

**I.     Background**

Gillens sues several Federal Bureau of Prisons ("BOP") officials for constitutional violations they allegedly inflicted on him while he was incarcerated at a federal prison in Bruceton Mills, West Virginia.  He is now housed at a BOP facility in Coleman, Florida.  *See* ECF No. 1, § A, ¶ 1 ("Compl.").  In broad strokes, Plaintiff seeks various forms of relief stemming from three incidents: first, he says he was placed in a Special Housing Unit following an incident at the facility, and BOP officials denied him various privileges while he awaited a disciplinary hearing for one hundred days, all in violation of his due process rights, ECF No. 1, § B ¶¶ 1–12; second, he claims an unnamed BOP official violated his First Amendment rights by opening his legal mail, *id.* § B, ¶¶ 13–18; and third, he claims that BOP has acted with deliberate indifference by failing to provide him dental care, causing his teeth to "decay, crack, bleed" and his gums to develop "gum disease," *id.* § B, ¶¶ 19–23.  As to each claim, Plaintiff alleges that the then-BOP director Carvajal, "failed to implement a BOP policy and procedure" to prevent the alleged wrongdoing.  *See id.* § B, ¶¶ 11, 15, 19.

Defendants are the BOP's Director, Colette Peters, in her official capacity[1]; Carvajal; Connors, BOP's National Inmate Appeals Administrator; Petrucci, the BOP Mid-Atlantic Regional Director; and four individuals from the West Virginia prison: Ryan McCaffrey, the Associate Warden then; Kenneth Craddock, a disciplinary hearing officer; Shane Hixenbaugh, a corrections officer; and DOE #1, an unknown staffer who processes mail.  *See* Compl. § A, ¶¶ 4–8.  Plaintiff sues only Peters in her official capacity.  *See id.* § A, ¶ 9.  He sues all other defendants in their individual capacities for damages under *Bivens*.  *See id.* § A, ¶ 10.  Besides damages, Plaintiff

---

[1] Plaintiff sued the then-BOP director, Michael Carvajal, in both his official and individual capacities.  Peters has since succeeded Carvajal as BOP director and assumes his place as the defendant for Plaintiff's official-capacity claims.  *See* Fed. R. Civ. P. 25(d).  But Carvajal remains a defendant in his individual capacity.

seeks a declaratory judgment that Defendants' conduct violated his constitutional rights and an injunction requiring the immediate provision of dental care. *See id.* § D, ¶¶ 1–2.

Defendants move to dismiss on several grounds, including lack of personal jurisdiction over each defendant besides Carvajal and Connors, improper service, failure to state a claim, and improper venue. *See* ECF No. 11. Alternatively, they move to transfer any surviving claims to either the Northern District of West Virginia, where the conduct underpinning Plaintiff's claims took place, or the Middle District of Florida, where Plaintiff is now incarcerated. *See id.*

## II.     Legal Standards

Federal Rule of Civil Procedure 12(b)(3) authorizes dismissal for improper venue. Although a court resolving such a motion "accepts the plaintiff's well-pleaded factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor," the plaintiff retains the burden to prove proper venue. *Sierra Club v. Johnson*, 623 F. Supp. 2d 31, 34 (D.D.C. 2009) (quotation omitted). If a court finds it lacks venue, it "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which [the action] could have been brought." 28 U.S.C. § 1406(a).

Under Rule 12(b)(6), a complaint must "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A claim is plausible if "it contains factual allegations that, if proved, would allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (quotation omitted). The Court must "accept all the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences from those allegations in the plaintiff's favor." *Id.* (quotation omitted).

3

**III.   Analysis**

    **A.**    *Bivens* **Claims**

           **1.**    **Venue**

Plaintiff's *Bivens* claims are the heart of his complaint, and so the Court begins by addressing whether venue on these claims is proper in the District of Columbia.[2]  For such claims, venue is proper in the judicial district where (1) any defendant resides if all defendants reside in the same state as that district; (2) "a substantial part of the events or omissions giving rise to the claim[s] occurred"; or (3) if no district satisfies the foregoing, "any judicial district in which any defendant is subject to the court's personal jurisdiction."  28 U.S.C. § 1391(b); *see also Coltrane v. Lappin*, 885 F. Supp. 2d 228, 233–34 (D.D.C. 2012).[3]

As to these *Bivens* claims, venue is improper here.  First, most defendants reside outside the District of Columbia, making § 1391(b)(1) inapplicable.  *See* Compl. § A, ¶¶ 3–8; ECF No. 11-1 at 15.  Second, a substantial part of the events or omissions giving rise to the claims did not

---

[2] "Typically, questions of personal jurisdiction are determined prior to venue, although in certain circumstances 'sound prudential justification' may allow the court to consider venue without first deciding personal jurisdiction." *Pinson v. U.S. Dep't of Just.*, 74 F. Supp. 3d 283, 292 n.17 (D.D.C. 2014) (quoting *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979)).  Courts in this circuit have recognized such a justification exists where "the venue question . . . provides an easier resolution of the case," as it does here.  *Cameron v. Thornburgh*, 983 F.2d 253, 257 n.3 (D.C. Cir. 1993).  Further, if the Court were to dismiss Plaintiff's claims for lack of personal jurisdiction rather than transferring the case to a district where both venue and personal jurisdiction lie, the pursuit of his claims might be stymied by a statute-of-limitations problem.  Especially given Plaintiff's pro se status, such an outcome would not be in the interests of justice.  *Cf. Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962) (allowing courts to transfer a case without personal jurisdiction over the defendants to avoid "penaliz[ing]" a plaintiff who "shows a desire . . . to begin his case and thereby toll whatever statutes of limitation would otherwise apply" by dismissing a case because of a venue "mistake").

[3] The Court first considers whether venue is proper for Plaintiff's *Bivens* claims, and then turns to the remaining official-capacity claim against Peters.  *Lamont v. Haig*, 590 F.2d 1124, 1135 (D.C. Cir. 1978) (plaintiffs generally must "demonstrate proper venue with respect to each cause of action and each [defendant]"); *see also Coltrane*, 885 F. Supp. 2d at 234 (applying this principle to consider venue as to *Bivens* claims separately from other claims in the complaint).

occur here under § 1391(b)(2).  The only "omissions" Plaintiff alleges took place here were Carvajal's and Connor's failure to enact policies or otherwise correct constitutional violations.  *See* Compl. § B, ¶¶ 11, 15, 17, 19, 21, 23.  And third, because a substantial part of the events or omissions giving rise to the claims *did* happen in the Northern District of West Virginia, *see id.* § B, ¶¶ 1–9, 13–14, 19, venue is proper there under § 1391(b)(2), rendering § 1391(b)(3) inapplicable.

### 2. Transfer

Having concluded that venue for these claims does not lie in this district, the Court is left with two options: dismiss them or transfer them to a district "in which they could have been brought." 28 U.S.C. § 1406(a).  Thus, before transferring, the court must "'decide as a preliminary matter that venue and jurisdiction would be proper as to all defendants' in the transferee court." *Coltrane*, 885 F. Supp. 2d at 235 (quoting *Sharp Elecs. Corp. v. Hayman Cash Reg. Co.*, 655 F.2d 1228, 1230 (D.C. Cir. 1981)).  Beyond that, the decision whether to dismiss or transfer a case "rests within the sound discretion of the district court." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983).  But transfer, rather than dismissal, is the "standard remedy for improper venue." *Nat'l Wildlife Fed'n v. Browner*, 237 F.3d 670, 674 (D.C. Cir. 2001).  And that presumption "is especially strong where a plaintiff files a complaint *pro se*." *Fam v. Bank of Am. NA (USA)*, 236 F. Supp. 3d 397, 408 (D.D.C. 2017).

For the following reasons, the Court will dismiss the *Bivens* claims against Carvajal, Connors, and Petrucci, but it will transfer the *Bivens* claims against the remaining defendants to the Northern District of West Virginia.

### a. Defendants Carvajal, Connors, and Petrucci

The Court doubts that either the Northern District of West Virginia or Middle District of Florida would have personal jurisdiction over these defendants.  *See* W. Va. Code § 56-3-33(a) (West Virginia Long-Arm Statute); Fla. Stat. § 48.193(1)(a) (Florida Long-Arm Statute).  These

5

defendants reside outside those districts, and Plaintiff does not allege they directed or otherwise participated in the conduct of which he complains within the district. For that reason, it appears unlikely that the Court could transfer the *Bivens* claims against these defendants to either of those districts. *See Coltrane*, 885 F. Supp. 2d at 235.

But even when venue is improper, courts may dismiss claims rather than transfer them if they fail to satisfy Rule 12(b)(6). *See Cameron*, 983 F.2d at 257 n.5 (declining to transfer *Bivens* claims against the then-Attorney General and BOP director under 28 U.S.C. § 1406 because doing so "plainly [was] not in the interests of justice" where "briefing and argument . . . ha[d] convinced [the court] that appellant ha[d] stated no claim against" those defendants); *Clark v. DocuSign, Inc.*, No. 21-cv-1007 (DLF), 2022 WL 16985185, at *3 (D.D.C. Nov. 15, 2022) (noting that when a court finds it lacks venue, "dismissal may be appropriate in circumstances where the complaint contains 'obvious substantive defects'" (quoting *Fam*, 236 F. Supp. 3d at 409–10)). And that is the case with the *Bivens* claims against these defendants. Plaintiff does not allege that Carvajal, Connors, or Petrucci—all of whom hold BOP regional or national leadership positions—participated in the conduct he claims violated his constitutional rights. *Burke v. Lappin*, 821 F. Supp. 2d 244, 247(D.D.C. 2011) ("To be held liable under *Bivens*, the official must have participated personally in the alleged wrongdoing." (citing *Iqbal*, 556 U.S. at 676)). Nor does he assert that any of these defendants "participated in any decision or approved any policy that related to the case." *Cameron*, 983 F.2d at 258. And *respondeat superior* is unavailable for *Bivens* claims. *See, e.g.*, *id.*

For his Fifth and First Amendment claims, Plaintiff alleges only that Carvajal failed to implement policies or procedures that would have prevented his injuries. Compl. § B, ¶¶ 11, 15. These allegations are no more than "'naked assertion[s]'" that Carvajal somehow "participat[ed]

in the events giving rise to the constitutional claim." *DeBrew v. Atwood*, 244 F. Supp. 3d 123, 131 (D.D.C. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)) (dismissing similar claims). The Court need not credit such "bald assertion[s] that [senior BOP officials] were aware of or adopted certain policies or practices." *Id.* Nor do these allegations, in any event, amount to the sort of personal involvement in wrongdoing required to sustain a *Bivens* action. *See id.* at 131–32; *see also Morris v. U.S. Sent'g Comm'n*, 62 F. Supp. 3d 67, 75 (D.D.C. 2014) ("[H]igh-level officials . . . typically are not subject to *Bivens* liability since they do not routinely participate personally in decisions about a particular individual at a particular location.").

Plaintiff's Eighth Amendment claim fares no better. He asserts that Carvajal knew from "grievances, written and formal complaints" that he had not received a teeth cleaning "and failed to take any action," "which caused a reckless disregard for Plaintiff's dental health care." Compl. § B, ¶ 21. Similarly, Petrucci and Connors "failed to correct" these violations after "review[ing]" complaints, in deliberate indifference to his Eighth Amendment rights. *Id*. § B, ¶¶ 22–23. To begin, Plaintiff does not allege that he filed any complaint related to his dental hygiene or any basis to infer that these defendants might have reviewed such a complaint. But even if he had, the mere fact that these officials knew about the alleged wrongdoing "provides no basis for imposing personal liability" on them because they "could not have possibly participated in the day-to-day decisions about plaintiff's confinement." *Burke*, 821 F. Supp. 2d at 248 (dismissing similar *Bivens* claims against the BOP director and other officials). In other words, even if Plaintiff had filed grievances, any BOP official's response—or lack thereof—"does not itself render him personally liable" for the underlying constitutional violation. *See Gonzalez v. Holder*, 763 F. Supp. 2d 145, 150 (D.D.C. 2011).

Thus, the Court will dismiss the *Bivens* claims against Carvajal, Connors, and Petrucci.

### b. Defendants McCaffrey, Craddock, Hixenbaugh, and DOE #1

Although the Court dismisses the claims against Carvajal, Connors, and Petrucci, it will exercise its discretion under 28 U.S.C. § 1406(a) to transfer the *Bivens* claims against McCaffrey, Craddock, Hixenbaugh, and DOE #1 to the Northern District of West Virginia.[4] The Northern District of West Virginia is a district "in which [these claims] could have been brought." 28 U.S.C. § 1406(a). As the Court has already noted, venue is proper there because "a substantial part of the events or omissions giving rise to [Plaintiff's] claim[s] occurred" at the BOP facility within the district, 28 U.S.C. § 1391(b); and that court may exercise personal jurisdiction over the remaining defendants either because they currently reside in the district or because of their conduct there as alleged in the complaint, *see* Compl. § B, ¶¶ 3–6; W. Va. Code § 56-3-33(a)(3). *See Coltrane*, 885 F. Supp. 2d at 235.

The Court further finds that transfer, rather than dismissal, is "in the interest of justice." 28 U.S.C. § 1406(a). Because Plaintiff proceeds pro se, the presumption favoring transfer is particularly strong. *See Fam*, 236 F. Supp. 3d at 408; *see also Coltrane*, 885 F. Supp. 2d at 236 (favoring "transfer . . . over dismissal" where "plaintiff [was] proceeding *pro se*"). And Plaintiff has requested that the Court appoint counsel and has moved to amend his complaint.[5] ECF No. 19. Thus, the interests of justice favor transfer to the Northern District of West Virginia.

---

[4] As noted above, Defendants also propose the Middle District of Florida, where Plaintiff resides, as an alternate transferee court. But that court lacks personal jurisdiction over these defendants, so it is not a candidate for transfer. *See Coltrane*, 885 F. Supp. 2d at 235; Fla. Stat. § 48.193(1)(a).

[5] Plaintiff included a document titled "amended complaint" with his motion for leave to file his surreply. ECF No. 19-1. The Court leaves to the transferee court the question of whether to allow any such amendment. Still, the Court notes that the "amended complaint" does not change the allegations directed at Carvajal, Connors, or Petrucci. *See id.* § IV, ¶¶ 11, 15, 22–24. Thus, the amendment would not affect the Court's analysis of those claims.

### B.     Official-Capacity Claim

#### 1.     Venue

All that remains of this suit is Plaintiff's official-capacity claim against current BOP director Peters, through which he seeks an injunction requiring immediate dental care. *See* Compl. § D, ¶ 2. Unlike the *Bivens* claims comprising the majority of Plaintiff's suit, the District of Columbia is—barely—a permissible venue for this claim. *See* 28 U.S.C. § 1391(e)(1)(A) (venue for claims against a federal official is proper where "a defendant . . . resides"); *see* ECF No. 11-1 at 47 n.8 (acknowledging the BOP director works in the District of Columbia).

#### 2.     Transfer

Thus, the Court will analyze Defendants' motion to transfer this claim under § 1404(a), which permits transfer even when venue is proper in the transferor court. *See* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."). For the following reasons, the Court will transfer this claim to the Northern District of West Virginia, along with Plaintiff's *Bivens* claims.

To begin, even when venue is technically proper, "[c]ourts in this circuit must examine challenges to . . . venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia." *Cameron*, 983 F.2d at 256. A complaint "must allege more than a 'bare assumption that policy decisions made in Washington might have affected' a Plaintiff's treatment in federal prison." *Pinson v. U.S. Dep't of Just.*, 74 F. Supp. 3d 283, 293 (D.D.C. 2014) (quoting *Cameron*, 983 F.2d at 256). And "[w]here . . . the only real connection the lawsuit has to the District of Columbia is that a federal agency headquartered here is charged with generally regulating and overseeing the administrative process, venue is not appropriate in the District of Columbia." *Al-Ahmed v. Chertoff*, 564 F. Supp. 2d 16, 19 (D.D.C. 2008) (quotation omitted)

9

(cleaned up). Such is the case here, where Plaintiff does not challenge any BOP policy or allege that the director participated in any wrongdoing. Instead, Plaintiff requests only that the BOP provide him with dental care, a process he claims the BOP director is supposed to oversee. *See* ECF No. 17 at 12.

Still, before carrying out transfer under § 1404(a), courts must ensure venue is proper in the transferee district and consider several factors. When a plaintiff is incarcerated, courts consider "(1) the prisoner's difficulty in communicating with counsel, (2) the difficulty of transferring the prisoner, (3) the availability of witnesses and files, (4) where the prisoner's immediate custodian is located, and (5) the speed of final resolution." *See Montgomery v. Barr*, 502 F. Supp. 3d 165, 173–74 (D.D.C. 2020) (citing *Starnes v. McGuire*, 512 F.2d 918, 929–32 (D.C. Cir. 1974) (en banc)). "[A] court should also consider 'whether the case involves a national policy issue that may require the testimony of policymakers.'" *Id.* at 174 (quoting *Accurso v. Fed. Bureau of Prisons*, No. 17-cv-2626 (APM), 2018 WL 4964501, at *2 (D.D.C. Oct. 15, 2018). And in all cases, courts consider various private- and public-interest factors, such as "the parties' choices of forum, where the claim arose, the convenience of the parties and witnesses, and 'the ease of access to sources of proof.'" *Id.* (quoting *Spotts v. United States*, 562 F. Supp. 2d 46, 52 (D.D.C. 2008)). Courts "retain broad discretion in weighing these factors." *Pinson*, 74 F. Supp. 3d at 292.

First, venue is proper in the Northern District of West Virginia because "a substantial part of the events or omissions giving rise to the claim occurred" there. 28 U.S.C. § 1391(e)(1)(B). Plaintiff's claim for injunctive relief rests on the purported Eighth Amendment violation he asserts he has suffered—that BOP has failed to provide him dental care in over three years. Compl. § B, ¶ 19. Although Plaintiff is now incarcerated in the Middle District of Florida, his complaint alleges he was held in the Northern District of West Virginia at least as recently as January 2021. *See id.*

§ B, ¶ 14.  He filed his complaint in June 2022.  *See* ECF No. 1 at 12.  So "a substantial part of the . . . omission giving rise to [this] claim" occurred in the Northern District of West Virginia.  28 U.S.C. § 1391(e)(1)(B).

Second, the relevant factors under § 1404(a) favor transfer to the Northern District of West Virginia, rather than severing the claim and retaining jurisdiction over it here.  *See Pinson*, 74 F. Supp. 3d at 288 (explaining that, to transfer only certain claims in a complaint, "the court must first sever the relevant claims into separate cases").  Plaintiff is pro se, so the first *Starnes* factor relevant to incarcerated plaintiffs does not apply.  *See Montgomery*, 502 F. Supp. 3d at 173–74.  And he is no longer incarcerated in the Northern District of West Virginia, rendering the second and fourth *Starnes* factors neutral as between the Northern District of West Virginia and the District of Columbia.  *See id.*  All the remaining factors favor transfer; none supports severing the claim to keep it here.  *See id.*  Plaintiff's Eighth Amendment claim arose in the Northern District of West Virginia, and it would be more convenient for the parties to access witnesses, evidence, and files there.  *See* Compl. § B, ¶ 19.  His claim does not challenge a national policy promulgated here, and although the District of Columbia is his choice of forum, that choice "is mitigated when it is not the plaintiff's home forum."  *Santos v. Trs. of Grinnell Coll.*, 999 F. Supp. 2d 219, 223 (D.D.C. 2013).  And judicial economy favors keeping all the claims in the complaint together.  *See Sanchez-Mercedes v. Bureau of Prisons*, 453 F. Supp. 3d 404, 426 (D.D.C. 2020) (accounting for judicial-economy concerns when evaluating whether to transfer a prisoner's case).

At bottom, "nam[ing] high level officials as defendants . . . is not enough to 'anchor venue here.'"  *Montgomery*, 502 F. Supp. 3d at 177–78 (quoting *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 81 (D.D.C. 2009)).  For that reason, and accounting for all the relevant factors, the Court will

exercise its discretion to transfer Plaintiff's official-capacity claim against the BOP director to the Northern District of West Virginia along with his remaining *Bivens* claims.

### IV. Conclusion and Order

For all these reasons, it is hereby **ORDERED** that Defendants' Motion to Dismiss or, Alternatively, Transfer, ECF No. 11, is **GRANTED IN PART** insofar as it seeks dismissal of the *Bivens* claims against Defendants Carvajal, Connors, and Petrucci, and transfer of the remaining claims to the Northern District of West Virginia. It is further **ORDERED** that the claims against Defendants Carvajal, Connors, and Petrucci are **DISMISSED**. It is further **ORDERED** that the Clerk of Court shall transfer the case to the U.S. District Court for the Northern District of West Virginia.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 13, 2023